UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BERK-COHEN ASSOCIATES, LLC,                         CIVIL ACTION
MANHATTAN MANAGEMENT COMPANY, LLC

VERSUS                                          NO: 07-9205 c/w
                                             07-9207

LANDMARK AMERICAN INSURANCE CO.         SECTION: R(1)

**ORDER AND REASONS**

Before the Court is defendant Landmark American Insurance
Co.'s motion for reconsideration.  (R. Doc. 78).  For the
following reasons, the Court DENIES Landmark's motion.

I.    **BACKGROUND**

Plaintiff Berk-Cohen Associates, LLC owns a sixty-six
building apartment complex.  The complex consists of more than
700 apartments and is known as Forest Isle Apartments.  Berk-
Cohen obtained two policies of insurance from Landmark.  The
policy provided insurance coverage for physical damage to the
Forest Isle Apartments as well as lost rental value resulting
from such damage.  In addition, the policy provided insurance
coverage for other properties Berk-Cohen owned, including

-1-

apartment complexes in New Jersey and New York.  (R. Doc. 19, Ex. A).

Hurricane Katrina severely damaged the Forest Isle Apartments.  (R. Doc. 19).  Landmark paid $19,349,197.00 for the resulting damages to the buildings.  (R. Doc. 19).  Repair and rehabilitation of the Forest Isle Apartments began immediately after Hurricane Katrina and, despite setbacks caused by a fire and transformer explosion, were completed roughly two years later, in September 2007.  (R. Doc. 20).

On August 28, 2007, plaintiff Berk-Cohen sued Landmark in state court.  Landmark removed the suit to this Court in accordance with 28 U.S.C. §§ 1332, 1441 and 1446.  In its suit, Berk-Cohen alleges "losses in business income due to windstorm and other non-flood damages to the Forest Isle Apartment Complex."  This claim relates to losses incurred from Berk-Cohen's inability to rent units in the Forest Isle Apartments when the apartments were under repair.  On May 14, 2009, Landmark moved for partial summary judgment on Berk-Cohen's business income loss claim.  Landmark argued that it had fully compensated Berk-Cohen for any business income lost, and that the insurance policy at issue did not allow Berk-Cohen to recover for any increase in demand for housing caused by Hurricane Katrina.[1]  On

---

[1] Landmark's calculations rely solely on pre-Katrina occupancy rates and rental prices.  Berk-Cohen's calculations account for a post-Katrina increase in occupancy rate from 91.4

August 27, 2009 this Court denied Landmark's motion.  (R. Doc.

77).  The Court held, in pertinent part, that the Landmark

insurance policy did not preclude Berk-Cohen from presenting

evidence of changed market conditions to prove future business

income.  *Id.*  Landmark now moves the Court to reconsider its

August 27 Order.  (R. Doc. 78).


## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) provides that an order

that adjudicates fewer than all the claims among all the parties

"may be revised at any time" before the entry of a final

judgment.  Fed. R. Civ. P. 54(b).  As Rule 54 recognizes, a

district court "possesses the inherent procedural power to

reconsider, rescind, or modify an interlocutory order for cause

seen by it to be sufficient."  *Melancon v. Texaco, Inc.*, 659 F.2d

551, 553 (5th Cir. 1981).  Although the district court's

discretion in this regard is broad, *see Calpetco 1981 v. Marshall

Exploration, Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993);

*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185

(5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air

Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc), it is exercised

sparingly in order to forestall the perpetual reexamination of

---

percent to 100 percent.  (R. Doc. 20).  Berk-Cohen's calculations
also include an up-tick in rental price by more than 40 percent.
Id.

orders and the resulting burdens and delays.  *See generally* 18b
Charles A. Wright et al., Fed. Prac. & Proc. Juris. § 4478.1 (2d
ed. 2002).

The general practice of this court has been to evaluate
motions to reconsider interlocutory orders under the same
standards that govern Rule 59(e) motions to alter or amend a
final judgment.[2]  Although there may be circumstances in which a
different standard would be appropriate, *see, e.g.*, *Am. Canoe
Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-16 (4th Cir.
2003), the present motion does not present them.  The proper
inquiry is therefore whether the moving party has "clearly
establish[ed] either a manifest error of law or fact or
. . . present[ed] newly discovered evidence."  *Ross v. Marshall*,
426 F.3d 745, 763 (5th Cir. 2005) (quoting *Simon v. United
States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).  A motion to
reconsider is "not the proper vehicle for rehashing evidence,
legal theories, or arguments that could have been offered or
raised before the entry of [the order]."  *Templet v. HydroChem
Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004).

---

[2] *See, e.g.*, *Lacoste v. Pilgrim Int'l*, No. 07-2904, 2009 WL
1565940, at *8 (E.D. La. June 3, 2009) (Vance, J.); *Rosemond v.
AIG Ins.*, No. 08-1145, 2009 WL 1211020, at *2 (E.D. La. May 4,
2009) (Barbier, J.); *In re Katrina Canal Breaches Consol. Litig.*,
No. 05-4182, 2009 WL 1046016, at *1 (E.D. La. Apr. 16, 2009)
(Duval, J.).

## III. ANALYSIS

Landmark moves the Court to reconsider its previous order denying partial summary judgment of Berk-Cohen's business income loss claim. (R. Doc. 78). Landmark argues that the Court did not construe the "business income loss" provision in light of the policy as a whole. *Id.* Specifically, Landmark contends that the Court's interpretation of the policy is inconsistent with the policy's Flood Exclusion Endorsement. *Id.*

The operative language of the Landmark Insurance Policy defines business income as "a) Net Income (Net Profits or Loss before income taxes) that would have been earned or incurred; and b) continuing normal operating expenses incurred, including payroll." (R. Doc. 19, Ex. A and B). The Landmark Insurance Policy further states how business income loss will be determined:

3.  Loss Determination

a.  The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss

or damage; and

    (4) Other relevant sources of information, including:
        (a)Your financial records and accounting procedures;
        (b)Bills, invoices and other vouchers; and
        (c)Deeds, liens or contracts.

(R. Doc. 19, Ex. A).

The Flood Exclusion Endorsement in the Landmark policy modifies the insurance coverage provided in "ALL COVERAGE PARTS" of the policy. It states:

> We will not pay for loss or damage caused directly or indirectly by Flood at any location selected below, in a Flood Hazard Zone selected below, or at any location situated in a 100 Year Flood Plain as delineated by the Flood Insurance Rate Map for the community in which the location is situated. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

(R. Doc. 19, Ex. A). The parties do not dispute that the Forest Isle Apartments are located in a selected "Flood Hazard Zone."

The Court's August 27 Order reasoned that the second clause of paragraph 3(a)(2) in the business loss provision explicitly refers to "*the* Covered Cause of Loss" triggering the business income loss provision. (R. Doc. 77). Since Berk-Cohen did not seek recovery for any flood related damages, and the parties did not dispute that flood was not a "Covered Cause of Loss," the Court held that the policy did not preclude Berk-Cohen from putting forward evidence of favorable business conditions resulting from flood. *Id.*

The gravamen of Landmark's argument for reconsideration is

that because the Flood Exclusion Endorsement applies to the entire policy, Berk-Cohen cannot recover for "indirect flood damage," including any favorable market conditions resulting from flooding.  (R. Doc. 78)("In this context, the only perils which could possibly lead to a recovery for additional lost business income are covered perils (Covered Cause of Loss); and given that only covered perils were included in the business income loss provisions, these were the only perils that a clause restricting recovery for favorable business conditions would need to address.").  The Court rejects this argument.  Damage resulting from a Covered Cause of Loss is still a prerequisite for business income coverage under Berk-Cohen's policy.  For example, if a terrorist attack was not a "Covered Cause of Loss" under the policy, and if a terrorist attack rendered the Forest Isle Apartments uninhabitable, Berk-Cohen could not recover for business income lost as a result of the attack.  Had the business income provision of the Landmark policy not been triggered, in this case by wind damage, Berk-Cohen could not do so by using evidence of favorable business conditions caused by flood.

Further, Landmark's argument ignores the plain structure of paragraph 3(a)(2) and renders the provision superfluous.  The first clause of paragraph 3(a)(2) allows for an insured to determine business income loss using "likely Net Income of the business if no physical loss or damage had occurred."  (R. Doc.

19, Ex. A).  The second clause, signaled by the conjunctive
phrase "but not," then carves-out from this panoply of potential
evidence "Net Income . . . earned as a result of . . . favorable
business conditions caused by . . . *the* Covered Cause of Loss."
*Id.*  As the Court previously stated, the use of the definite
article "the" restricts the covered loss to the one that
triggered the coverage at the insured property.  "*The* Covered
Cause of Loss" in this case was hurricane force winds.
Consequently, Berk-Cohen could not prove likely net income using
evidence of increased demand for apartments resulting from wind-
damage.  To the extent Berk-Cohen can prove favorable business
conditions caused by flood, however, the language of paragraph
3(a)(2) doe not prohibit it from doing so.  If the phrase "the
Covered Cause of Loss" in the paragraph's second clause were read
to include favorable business conditions resulting from non-
covered perils, as Landmark suggests, its scope would expand and
include any loss whatsoever (i.e., "any physical loss or
damage").  This would functionally read out the word "Covered"
from the phrase "the Covered Cause of Loss," and in turn, make
the paragraph's second clause an engulfing exclusion, rather than
a limited carve-out.  In this case, Berk-Cohen is praying for
loss of business income resulting from wind damage.  Berk-Cohen
is not praying for damage caused by flood, to which the Flood
Exclusion Endorsement applies.

As the Court noted in its August 27 Order, the applicable policy language has not been construed by the Fifth Circuit or any other appellate court. (R. Doc. 77). Contrary to Landmark's contention in this motion, the Court's previous order interpreted the policy so as to give meaning to all of its provisions. *See* La. Civ. Code art. 2049 ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."). In this case, giving meaning to the entirety of paragraph 3(a)(2) in the policy's business income loss determination provision results in a reasonable limitation on the term "indirect" in the policy's Flood Exclusion Endorsement. Though this conclusion may seem "absurd" to Landmark, (R. Doc. 60), the Court does not find it to be "a manifest error of law or fact." *Ross*, 426 F.3d at 763.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Landmark's motion for reconsideration. (R. Doc. 78).

New Orleans, Louisiana, this __5th__ day of November, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE