UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
---------------------------------------------------------x
BERK-COHEN ASSOCIATES, LLC, and
MANHATTAN MANAGEMENT
COMPANY, LLC,

                Plaintiffs,

   -against-

LANDMARK AMERICAN INSURANCE
CO.,

               Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
Case Nos. 07-CV-9205 (FB) (SS)
          07-CV-9207 (FB) (SS)
          (consolidated)

*Appearances:*
*For the Plaintiffs:*
LORETTA G. MINCE, ESQ.
LANCE C. MCCARDLE, ESQ.
DANIEL J. CARR, ESQ.
Fishman Haygood Phelps
Walmsley Willis & Swanson, LLP
201 St. Charles Avenue, 46th Floor
New Orleans, LA 70170

*For the Defendant*:
ROBERT I. SIEGEL, ESQ.
DANIEL G. RAUH, ESQ.
Gieger, Laborde & Laperouse, LLC
701 Poydras Street, Suite 4800
New Orleans, LA 70139

**BLOCK, Senior District Judge:**

        Plaintiff Berk-Cohen Associates, LLC ("Berk-Cohen") owns Forest Isle, a 700-unit apartment complex in New Orleans, Louisiana. Plaintiff Manhattan Management Company, LLC ("MMC") manages the complex pursuant to a contract with Berk-Cohen. Defendant Landmark American Insurance Co. ("Landmark") insured the complex from April 25, 2005, to April 25, 2007.

        Following Hurricane Katrina and three smaller incidents, Berk-Cohen submitted to Landmark claims for physical property damage and lost business income.

Landmark paid significant amounts on the claims, but not the full amounts sought by Berk-Cohen. In due course, Berk-Cohen filed suit in Louisiana state court, seeking recovery under the insurance policy, as well as statutory penalties and attorneys' fees for Landmark's alleged bad faith in miscalculating the extent of its coverage obligations. Landmark removed to this Court.[1]

The claims were tried to the Court on January 11 and 12, 2010. For the following reasons, the Court awards Berk-Cohen $2,799,064.42.

## BACKGROUND

**A. The Policy**

Landmark promised to pay Berk-Cohen up to $27,750,550 towards "the cost of repairing or replacing the lost or damaged property." Pls.' Ex. 1, "Building and Personal Property Coverage Form" at 10. The policy covered damage and loss due to numerous causes (called "Covered Causes of Loss"), but specifically excluded flooding.

In addition, Landmark insured plaintiffs for up to $4,647,286[2] against business income lost as a result of a covered property damage or loss. "Business Income" was defined as "(a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and (b) Continuing normal operating expenses incurred, including payroll." Pls.' Ex. 1, "Business Income (With Extra Expense) Coverage Form" at 1. The

---

[1]Federal jurisdiction is premised on diversity. *See* 28 U.S.C. § 1332. The parties agree that the substantive law of Louisiana governs.

[2]The record does not shed any light on how this seemingly peculiar policy limit was calculated.

2

amount of lost business income was to be determined based on:

> (1) The Net Income of the business before the direct physical loss or damage occurred;
>
> (2) The likely Net Income of the business if no physical loss had occurred, but not including any New Income that would likely have been earned as a result of an increase in the volume of business due to favorable conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;
>
> (3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damages; and
>
> (4) Other relevant sources of information[.]

*Id.* at 5. The period for which lost Business Income was to be calculated was to begin "72 hours after the time of direct loss or damage" and end 30 days after "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality." *Id.* at 7.[3]

**B. Issues for the Court**

Berk-Cohen argues that Landmark failed to abide by its policy in the following four respects, three involving its claim for lost business income and one involving its property damage claim. It further argues that one or more of those failures amounted to bad faith under Louisiana law.

### 1. Lost Business Income Claim -- Effect of Hurricane Katrina

---

[3]Thus, the policy covered lost business income extending beyond its expiration date, as long as the physical damage causing the loss occurred while it was in effect.

The centerpiece of the parties' dispute concerns the effect of Hurricane Katrina on rents in New Orleans. To date, Landmark has paid Berk-Cohen $3,094,733 of the $4,647,286 policy limit for lost business income. Landmark based its calculation solely on historical rents at Forest Isles, making no allowance for a potential increase in demand in the aftermath of the storm.

In connection with Landmark's motion for summary judgment, however, Judge Vance held that the policy language "allow[ed] Berk-Cohen to recover for favorable market conditions resulting from flooding," but not resulting from wind damage. *Berk-Cohen Assocs. v. Landmark Am. Ins. Co.*, 2009 WL 2777163, at *6 (E.D. La. Aug. 27, 2009). That ruling set the stage for the bench trial: the parties disputed both the total increase in rents and the portion attributable to flooding. In addition, they disputed which party bore the burden of establishing the apportionment between flooding and wind damages.

Berk-Cohen's claim for lost business income due to the effect of flooding on the New Orleans rental market has the potential to exhaust the remaining $1,552,553 ($4,647,286 less $3,094,733) available for that loss. Since the Court concludes that it does, it need not consider the following two issues, which are set forth only for the sake of completeness.

**2. Lost Business Income -- Continuing Normal Operating Expenses**

Under the policy, lost business income is a function of likely net income (the subject of the preceding issue) and "[c]ontinuing normal operating expenses." Berk-Cohen argues that Landmark failed to pay all such expenses incurred during the restoration period. Landmark responds that any increase in that aspect of Berk-Cohen's lost business

4

income would be offset, dollar-for-dollar, by a decrease in its likely net income.

### 3. Lost Business Income -- Restoration Period

As noted, Landmark was obligated to reimburse Berk-Cohen for lost business income until 30 days after Forest Isle should have been "repaired, rebuilt or replaced with reasonable speed and similar quality." Although the parties agree that repairs were *actually* completed on September 20, 2007, Landmark paid lost business income only though June 30, 2007, taking the position that repairs *would have been* completed by that date but for delays caused by Berk-Cohen. Berk-Cohen disputes this.

### 4. Property Damage -- Management Fee Claim

As part of its property damage claim, Berk-Cohen claimed a "management fee" owed to MMS for project management services.[4] Because this claim does not involve lost business income, the Court must address it.

Initially, Berk-Cohen claimed that the fee equaled 10% of the renovation costs per a contract between it and MMS; at trial, it argued that the fee equaled 5% of the renovation costs on a *quantum meruit* theory. Landmark responds that the management fee, whether 10% or 5%, was not an actual cost incurred by Berk-Cohen.

### 5. "Bad Faith"

Apart from the four coverage issues, the parties dispute whether Landmark's treatment of Berk-Cohen's claims subjected Landmark to a statutory penalty in excess of

---

[4]MMS originally claimed the same fee directly from Landmark as lost business income. *See Berk-Cohen Assocs.*, 2009 WL 2777163, at *6. It did not oppose summary judgment in favor of Landmark on that claim, however, thereby leaving Berk-Cohen as the sole plaintiff. *See id.*

policy limits under Louisiana law. In addition, they dispute which version of the statute applies; this dispute affects the amount of the penalty and whether Berk-Cohen is entitled to attorneys' fees.

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

### 1. Lost Business Income – Effect of Hurricane Katrina

**Findings of Fact:**

- **Hurricane Katrina caused averagerents in the area surrounding Forest Isle to increase by approximately 35% over pre-Katrina rents.**

This finding is based on the following evidence:

During Forest Isle's restoration, Berk-Cohen was able to raise rents by an average of 22%. This increase does not take into account that Forest Isle was, during that time, an active construction zone not yet restored to its pre-Katrina condition.

Berk Cohen's real estate appraisal expert, Dr. Wade Ragas, opined that Hurricane Katrina caused rents in New Orleans to increase by 39%. He based his opinion principally on several reliable surveys of pre- and post-Katrina rents, including one by the federal Department of Housing and Urban Development ("HUD") and another by the University of New Orleans ("UNO").

Landmark's expert, Michael Truax, criticized Dr. Ragas's opinion, principally on the ground that it was based on city-wide studies rather than an assessment of comparable apartment complexes in the local market embracing Forest Isle. Based on his own review of such "comps," he opined that Katrina caused rents in the area surrounding Forest Isles to increase by between 15% and 18%.

6

The Court finds Truax's opinion less plausible because it estimates a rent increase *less* than that actually observed at Forest Isle despite the less-than-ideal condition of the property. On the other hand, the Court agrees with Truax's observation that comparables are a more reliable predictor of rents at a particular location, rather than city-wide surveys. In response to that challenge, however, Berk-Cohen presented an analysis confined to the Algiers submarket (the market in which Forest Isle most directly competes). *See* Pls.' Ex. 104. Weighed for Forest Isle's particular mix of 1-, 2- and 3-bedroom units, that analysis showed an increase of a little over 35%. The Court takes that as the most reliable indicator of Hurricane Katrina's likely effect on rents at Forest Isle.

- **Approximately 30% of the 35% increase in post-Katrina rates was caused by flooding**.

This finding is based on the following evidence:

Dr. Ragas surveyed all U.S. hurricane landfalls between 2002-2008. From a list of twelve storms, he selected four whose damage was due almost exclusively to wind. Again using HUD data, he concluded that the average rent increase in the cities affected by those storms was 4.2%. From that, he extrapolated that flood damage was responsible for the remainder of the post-Katrina rent increase in New Orleans.

Landmark did not offer an alterative apportionment of wind and flood effects. Instead, it took issue with Dr. Ragas's methodology, contending that apportionment was impossible.

The law recognizes that certain types of damages are incapable of precise measurement; thus, both Louisiana courts and the Fifth Circuit recognize that lost profits

7

need be proven only as precisely as circumstances allow. *See ScenicLand Constr. Co. v. St. Francis Med. Ctr.*, 936 So. 2d 247, 252 (La. 2d Cir. 2006) ("Broad latitude is given in proving lost profits because this element of damages is often difficult to prove and mathematical certainty or precision is not required."); *Malcolm v. Marathon Oil Co.*, 642 F.2d 845, 864 (5th Cir. 1981) ("The relaxation of the standards of proof [is] particularly appropriate in cases where the finder of fact must estimate lost future profits.").

Dr. Ragas's opinion, while undoubtedly imprecise, was a reasonable, good-faith effort to calculate what Landmark describes as impossible. Notwithstanding its imprecision, the Court accepts it as sufficient under the circumstances. To simplify the calculations, the Court uses 5% instead of 4.2%; either number exceeds the policy limit for lost business income.[5]

**Conclusions of Law:**

As noted, Judge Vance held that Berk-Cohen may recover as lost business income increased rents attributable to "favorable market conditions resulting from flooding." *Berk-Cohen Assocs.*, 2009 WL 2777163, at *6 (E.D. La. Aug. 27, 2009). Landmark asks the Court to reconsider that holding, calling its attention in particular to *Catlin Syndicate Ltd. v. Imperial Palace of Miss., Inc.*, 600 F.3d 511 (5th Cir. 2010), decided after Judge Vance's holding.

The policy language at issue in *Catlin* provided that "[i]n determining the

---

[5]By finding Dr. Ragas's opinion a sufficient effort to apportion between wind- and flood-related effects, the Court avoids the issue of which party bears the burden of proof on that issue; even assuming that the burden lay with Berk-Cohen, it has been discharged.

amount of the [business income] loss as insured against by this policy, due consideration shall be given to experience of the business before the loss *and the probable experience thereafter had no loss occurred.*" *Id.* at 513 (emphasis added). The Fifth Circuit concluded that the language prohibited the insured from basing a claim for lost profits on favorable business conditions resulting from Hurricane Katrina; in so doing, the court relied heavily on *Finger Furniture Co. v. Commonwealth Insurance Co.*, 404 F.3d 312 (5th Cir. 2005). In that case, the circuit court held that virtually identical language precluded an *insurer* adjusting a lost business income claim from claiming an offset for profits earned as a result of favorable business conditions following a tropical storm. *See id.* at 314.

Although *Catlin* postdates Judge Vance's ruling, she had the benefit of *Finger Furniture*. She distinguished that case on the ground that the policy language here excludes consideration of "favorable business conditions caused by the impact of *the Covered Cause of Loss* on customers or on other businesses," *Berk-Cohen*, 2009 WL 27777163, at *3 (emphasis added); since the "Covered Cause of Loss" was wind damage, she reasoned, the policy did not preclude consideration of favorable business conditions resulting from other causes, including flooding, which was specifically excluded from coverage. *See id.* at *6 ("The Court will not treat wind and flood damage as the same when the policy itself does not do so."). Since *Catlin* is distinguishable for the same reason, the Court declines Landmark's invitation to countermand Judge Vance's ruling.

In sum, the Court concludes that Berk-Cohen would have been able to increase its rents by 30% due to the flooding caused by Hurricane Katrina had Forest Isle not suffered wind damage. With that increase, Berk-Cohen's gross income between

9

September 2005 and July 2007 would have totaled $12,699,781. Applying the other components of the calculation -- which are undisputed -- yields the following:

| | |
|---|---:|
| Gross Income: | $12,699,781.00 |
| Operating Expenses: | (6,121,837.00) |
| Continuing Normal Operating Expenses | 6,121,837.00 |
| Actual Income | (6,340,155.00) |
| Prior Payments | (3,094,733.00) |
| AMOUNT DUE | $3,264,893.00 |

Since the amount due is greater than the remaining policy limit of $1,552,553, Berk-Cohen is entitled to recover the latter amount from Landmark. Therefore, the Court need not reach the remaining two issues relating to the lost business income claim, and now passes directly to the management fee claim.

### 4. Property Damage -- Management Fee Claim

**Finding of Fact:**

- **MMS's management fee was not a cost actually incurred by Berk-Cohen.**

    This finding is based on the following evidence:

    For Berk-Cohen's property damage claims, the parties negotiated a "Scope of Work" setting forth a list of the items to be reimbursed for Forest Isle's restoration. A fee to be paid to MMS for managing or supervising the restoration does not appear on the list. The first time Berk-Cohen made a claim for the fee was after it learned that Landmark refused to take post-Katrina business conditions into account on its lost business income claim. The Court infers from these facts that the fee was not a cost actually incurred by Berk-Cohen, but rather an illusory claim to be used as leverage in negotiating with

10

Landmark.

**Conclusions of Law:**

"In an action under an insurance contract, the insured bears the burden of proving the existence of the policy and coverage." *Tunstall v. Stierwald*, 809 So. 2d. 916, 921 (La. 2002). Thus, to recover MMS's management fee, Berk-Cohen must show that the fee was a "*cost* of repairing or replacing the lost or damaged property." Pls.' Ex. 1, "Building and Personal Property Coverage Form" at 10. Since Berk-Cohen did not actually incur that cost, it is not entitled to recover MMS's fee as part of its property damage claim.

## 5. Bad Faith

**Findings of Fact:**

- **Landmark failed to pay Berk-Cohen's lost business income claim in full because it incorrectly interpreted its policy.**

- **Although Landmark made interim advances on the lost business income claim, Berk-Cohen did not present proof of loss on the full claim until June of 2007.**

**Conclusions of Law:**

An insurer's failure to pay a claim within 30 days of receiving satisfactory proof of loss subjects the insurer to a statutory penalty "when such failure is found to be arbitrary, capricious, or without probable cause." La. Rev. Stat. Ann. § 22:658(B)(1).[6] Until August 15, 2006, the penalty was "twenty-five percent damages on the amount found to be due from the insurer to the insured." La. Rev. Stat. Ann. § 22:658(B)(1) (2005).

---

[6]Section 22:658 was renumbered section 22:1892 in 2009. The Court will continue to refer to the statute as section 22:658, the designation in effect at the time of the events giving rise to this suit.

Thereafter, it was raised to "fifty percent damages on the amount found to be due from the insurer to the insured." 2006 La. Acts 813. In addition, the amendment provided, for the first time, "reasonable attorney fees" as part of the penalty. *Id.*[7]

In its most recent pronouncement on the subject, the Louisiana Supreme Court stated that "when there is a 'reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits.'" *Louisiana Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1114 (La. 2008) (quoting *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003)). By contrast, "Louisiana jurisprudence is clear that, when there is a dispute over the extent of coverage afforded by an insurance policy, the insurer bears the risk of misinterpreting its own policy and will be liable for penalties for its errors." *Id.* (citing *Carney v. Am. Fire & Indem. Co.*, 371 So. 2d 815, 819 (La. 1979)). In other words, even a good-faith disagreement over policy interpretation is "not a reasonable ground for refusing timely payment." *Id.*[8]

---

[7]The amendment further provided for an award of costs. *See* 2006 La. Acts 813. That provision would appear to be redundant, however, because costs run in favor of the prevailing party as a matter of course. *See* Fed. R. Civ. P. 54(d) ("[C]osts – other than attorney's fees – should be allowed to the prevailing party."); *Carter v. General Motors Corp.*, 983 F.2d 40, 43 (5th Cir. 1993) (holding that entitlement to costs is a matter of federal law under *Erie* doctrine).

[8]This rule is intended to discourage insurers from "hav[ing] their policy provisions interpreted at the expense of the insured." *Carney*, 371 So. 2d. at 819. There is some suggestion in Louisiana jurisprudence that an insurer can obtain a judicial construction of its policy without the risk of incurring a penalty by promptly bringing a declaratory judgment action, "instead of merely 'closing' its file" and waiting for its insured to bring a suit for damages. *See Songe v. Tennessee Life Ins. Co.*, 260 So. 2d 149, 152 n.1 (La. 4th Cir. 1972) (citing *Seguin v. Continental Serv. Life & Health Ins. Co.*, 89 So.

Since Landmark failed to pay Berk-Cohen the remaining $1,552,553 of the policy limit for lost business income because it incorrectly interpreted its policy to exclude consideration of all post-Katrina market conditions, it is subject to the statutory penalty.

It remains to determine whether the old or new version of section 22:658 applies. The applicable version of the statute is the one in effect when the insured's claim for the penalty accrued; such a claim accrues when the insurer fails to pay a claim within 30 days of receiving "satisfactory proof of loss." *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 199 (La. 2008). Since Landmark first received what it considered proof of lost business income in June of 2007, the new version of section 22:658 applies.

In sum, Landmark is liable to Berk-Cohen for a statutory penalty of $776,276.50, plus attorneys' fees and costs in an amount to be determined.

**CONCLUSION**

Berk-Cohen is entitled to recover from Landmark $1,552,553.00 for the remaining lost business income coverage and $776,276.50 for the statutory penalty. In addition, Berk-Cohen is entitled to prejudgment interest on the first amount "from the time it [was] due," La. Civ. Code Ann. art. 2000, and on the second amount "from the date of judicial demand [i.e., the complaint]," *Arceneaux v. Amstar Corp.*, 969 So. 2d. 775, 785 (4th Cir. 2007); to simplify matters, Berk-Cohen has agreed to have prejudgment interest on both amounts run from the filing of the complaint on August 28, 2007. Prejudgment

---

2d 113 (La. 1956)).

13

interest through August 31, 2010 totals $461,981.54.[9] Accordingly:

- In Case No. 07-CV-9205, the Clerk shall enter judgment in favor of Berk-Cohen and against Landmark in the amount of $2,790,811.04.

- In Case No. 07-CV-9207, the Clerk shall enter judgment in favor of Landmark and against MMS.

- Berk-Cohen shall, within thirty days of entry of this Memorandum and Order, file its motion for attorneys' fees and costs under section 22:658.

**SO ORDERED.**

_____s/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, NY
September 1, 2010

---

[9] 8/28/07-12/31/07: $2,328,829.50 x 0.35 years x 9.5% = $77,433.58
1/1/08-12/31/08: $2,328,829.50 x 1 year x 8.5% = $197,950.50
1/1/09-12/31/09: $2,328,829.50 x 1 year x 5.5% = $128,085.62
1/1/10-8/31/10: $2,328,829.50 x 0.67 years x 3.75% = $58,511.84
$461,981.54

Annual interest rates were taken from http://www.ofi.louisiana.gov/ (last visited Aug. 31, 2010).